Good morning, Your Honors. It may sound like Billy Goatcroft, but hopefully I can get through this. That used to happen to me when I had an argument schedule. That seemed to be the time when the cold would set in, so I can appreciate that. I have a cold, and I took a bunch of medicines to prevent me from sniffling up here, but hopefully it won't dry me up too much. Anyway, my name is Evan Murray. I'm representing Petitioner Fan Wu. May it The facts are essential to understand. The petitioner at the immigration court level provided four identity documents, all documents that she obtained in the Republic of China. The first identity document— Mr. Murray, let's be precise. Did she obtain them in person in China, or were they sent to her from China through other persons? My understanding, Your Honor, is that she did in fact obtain them herself. However, a couple of them were subsequently sent to her by her mother while she was in immigration court proceedings. Be very careful what you say. Okay. What evidence is there in the record that Wu went to an office in China and was given personally any of these documents? I don't know that there's specific evidence in that record. Is there any evidence of how she got the documents in the record? I know that in the record she indicated that her mother had sent her a couple of the documents. That is quite different from what your earlier statement was. I certainly don't mean to misinform the court or misrepresent the facts. The documents were indirectly forwarded to her through her mother in China. Yes, Your Honor, the four documents in question were a notarial birth certificate, a Chinese resident ID card, also known as a national ID card, the Chinese household registration, and also a Chinese driver's license. The problem came when a couple of the documents were sent to the government's forensic examiner, and the government's forensic examiner concluded that two of the documents were counterfeit. The documented examiner decided that the notarial birth certificate and also the national ID card were counterfeit. There was substantial testimony taken, and a documented examiner's conclusions are not absolute because they're subjective evidences that the documenter or the subject... Well, is there any evidence to the contrary? I mean, leaving aside the clearly erroneous standard, I didn't see anything that suggested to the contrary other than argument. To the contrary... The report was just suggestive. It's not conclusive. Well, I don't see any evidence stacked up on the other side to suggest that the report was wrong, so why... Actually, Your Honor... So that's my question. That's actually the crux of this case, is subsequently... I will indicate that initially the petitioner had not obtained a passport, and subsequent to the decision of the court, the petitioner felt like she had no choice but to go petition at the Chinese embassy for a passport. She obtained a passport from the Chinese government, which in fact verified that the documents that she had submitted to the court were in fact valid. No, that doesn't follow at all. It may suggest that she is in fact the person that she says she is, but I'm not sure how that demonstrates that the documents were not counterfeit. You can have counterfeit documents even if you're the person you say you are. Well, then let me restate. The passport, the issue was her identity. The documents were So later she came up with additional evidence. Later she came up with a passport that confirmed her identity to be the same identity... But the passport wasn't before the merits panel, it wasn't before the IJ or the BIA. She got the passport afterwards as part of her motion to reopen. That's correct, Your Honor. And she didn't show any circumstances as to why she hadn't gotten a passport earlier, and the BIA denied her motion to reopen. So let's not discuss the passport at this time. It's not part of the record. But it ought to be. Let me demonstrate... Have you made a motion to amplify the record, Mr. Murray? Yes, Your Honor. When? May I demonstrate why the passport ought to be before the court? Okay. There's two reasons. First of all... you should give due notice to the other side so the other side can object and oppose it. It's too late now to amplify the record. Let's go on to other issues in this case. That is essentially the only issue in this case. Is the passport in the record as part of the motion to reopen? Yes. Okay. So it's in the record. Yes. You've got it in front of us. The BIA responded to that by saying, well, there's no reason this couldn't have been obtained and presented. That's correct. And so what's wrong with that? I mean, ordinarily you don't get a do-over if you have a trial and it didn't go well. You don't say, well, okay, let me go get some more evidence and have this trial all over again. Okay. Let me demonstrate why there should be a do-over. First of all, was there a reasonable expectation for her to go get a passport? She had already supplied four identity documents that accurately identified her. All right? Well, it turns out the two of them are counterfeit. There is no evidence to the contrary. We have no reason not to accept the judgment of the immigration judge in accepting the forensic examiner's report. And you don't have anything to offer except that it turns out she really is the person she says she is. You've got other evidence to establish that. But that doesn't counter the fact that you've got a report that says they're counterfeit. So you're telling us that, in effect, okay, she thought she had enough, turned out not enough, so we should do it all over again so that she has another chance to get enough. And why is that? Well, okay, first of all, this is not a real ID act case. Second of all, she had provided four legitimate or four accurate. It's the adjective that gives you trouble. Okay. Accurate. She had provided four identity documents which accurately identified her as who she is. The second issue, if I may, Your Honor, is the fact that she. Well, you may, but you won't be answering the questions.  I'm trying to answer the question. Honestly, I am. Okay. She's a refugee. She's filing for asylum, saying she has a fear of the Chinese government. She doesn't want to go to the Chinese government and ask for a passport. She was asked in the court, why didn't you do this? She said, because I was arrested, I didn't believe they would give me a passport. Once her case had been denied, she felt like she had no choice but to go to the government and ask for a passport. But that was a legitimate reason. The question is, was it reasonable to ask? Was it reasonable to expect her to go get a passport before the fact? And there's two things that suggest, no, it's not. One of which, very ironically, is in the board's decision itself. The board, in its November decision, said, moreover, we conclude even if the immigration judge erred in faulting her for not applying for a passport. So the board itself acknowledges that the court erred in faulting her for not applying for the passport. Also, a sister circuit court, a third circuit court case of Lou V. Ashcroft says, asylum applicants cannot always reasonably expect to have an authenticated document from an alleged persecutor. The real issue is, was it reasonable to expect her to go get a passport when she was afraid to do that and when she already had supplied four documents which she asserted to be legitimate? I would submit to your court that it wasn't reasonable. I'll reserve the remainder of my time. Question? I don't think it would do any good. Okay. If there's questions, I'll certainly. Well, Judge Ferris tried to pose a question, and at the time, you didn't seem very interested in it. I didn't mean to interrupt you, Your Honor. You're representing your client. We're going to decide the case. Sometimes lawyers don't understand what the problems they have are until they read our disposition. And you'll read the disposition. We're going to write it. I apologize to the Court. No apology necessary. We'll hear from the Attorney General or her representative. I guess you're not the Attorney General, but you'll do. Good morning. Good morning. May it please the Court, Sharon Clay on behalf of the government. Why don't you just for the record state what you think the pivotal issue is before us today? I think it might help your opponent when he comes to rebut, because doing his primary argument, it's pretty clear that he doesn't know the question that's before us. So why don't you tell him so he can rebut if he wants to? Well, it's our position that Ms. Wu's submission of the counterfeit documents Could you keep your voice up a little bit? My apologies. It is our position that Ms. Wu's submission of her counterfeit identity documents supports an adverse credibility finding because identity has been an issue in her case from the very beginning. She submitted fake documents to counterfeit documents to reestablish what her identity was. Ms. Clay, is there any evidence whatsoever in the record that Ms. Wu, at the time that she submitted the two documents which the DHS found were counterfeit, knew or should have known that they were counterfeit? I keep in mind the case of Yemeni Bear. Yes. Please address that question and any distinction that you may find between the Yemeni case and this. We believe that Ms. Wu knew or should have known that the documents were counterfeit. Ms. Wu has indicated that to get a national ID card requires a photograph, a photographic ID. The reason why her national ID card was found counterfeit was because it was not presented with a photographic ID. And throughout the whole entire case, Ms. Wu had never made any attempt to explain how her photo ID failed to have a photograph in it. Where in the record is there testimony that Ms. Wu knew at the time that she submitted the documents that the national ID card required a photograph to be attached? Well, she found out in 2004 from the examiner's report that there was no photograph included. Later in her testimony or in a declaration, she indicated that in order for her to get a passport or an identification document, we would require a photo ID. So you're using some words that aren't quite precise in my mind. Later when she indicated, do you mean that she declared as a statement of fact under oath? Yes. She indicated that these documents were in fact real documents. She had had possession of the documents. When did she state that? She stated it. I think the administrative record, page 303, maybe 266 to 268. And when was that declaration executed? Well, it wasn't a declaration. It was during her testimony in court. And she said, I knew that my national identity card document was counterfeit because it didn't have my photograph on it? No, no, no. The examiner submitted a report in 2004 indicating that her ID did not have photographs. I understand that. Okay. Now, what about any testimony or any evidence shows that Ms. Wu knew or should have known that the national ID document was, in fact, counterfeit because there was no photograph attached to it? Correct. There was a document that was submitted, a report submitted by the forensic examiner. I'm sorry. Let me try again. Okay. Where is there any evidence that Ms. Wu, not the document examiner, Ms. Wu knew that the national ID card was fake because there was no photograph on it? There's no technical evidence that she knew. Is there any un-technical evidence? Yes. She should have known. Why? She knew that an ID was required for a national ID. Where did she say that her photograph was required for a national ID? Well, not for a national ID, but for photo identification. It's on administrative record page 86. Administrative record page 86? Yes. It was attached to a motion to reopen in which she was challenging her prior attorney's assistance before the court. And one of the things she commented on was the fact that she would never submit a false photograph to support a identification document. So she was clearly aware that IDs, photo IDs, were needed for identification documents. But she turns in a document. When was the motion to reopen filed? The motion, it had to be. . . 2011. Just outside the 30-day period after the board's decision because she complained about the attorney. Where's the evidence that at the time she submitted the document she knew or should have known there were counterfeits? The immigration judge took great pains to keep reminding her about the status of her documents. And as late as 2010, there was even a notice, a hearing notice, which indicated at the bottom that the documents were insufficient and that she needed to either make some kind of, explain why these documents were counterfeit or not counterfeit. She went and got two other documents. She got her motorcycle license and whatever the other document was. And those are not capable of being authenticated. But let me try once again. Give me a citation to a piece of evidence which shows that Ms. Wu, at the time she submitted the documents prior to the hearing in 2011 or whenever the hearing was, knew or should have known that the documents she submitted were false. The report on the ID card is at page 536 to 537. It was submitted. You have to speak up loud. The report is found at administrative record page 536 to 537. It was submitted to the court on August 9, 2004. So since 2004, Ms. Wu knew that the document didn't have a photograph in it. All right. I know that the document was submitted in 2004 from your examiner. It said it didn't have a photograph on it. Yes. I understand that. Okay. Now, I'd like to invite your attention to the following question. Okay. Point to the record, please, where Ms. Wu acknowledges that a photograph is necessary to make the document authentic. She does not acknowledge in the trial transcript that a photograph is required. I'm a little confused because all this talk has been about a photograph being required, and I look at the forensic examiner's report, it doesn't seem to talk about that at all. Right. What do you mean, the examiner's report? Yeah, it talks about counterfeit. Exhibit 1 is counterfeit because of simulated watermarks. Exhibit 2 is counterfeit because the laminate does not contain the features present in genuine laminate. The examiner testified to the lack of the photograph in the insert  So during the testimony. Well, then, but that's not something petitioner would have known until the testimony was given. All this talk about years of notice wouldn't seem to apply to that testimony. Okay. The immigration judge did explicitly state and reminded counsel that he needed to confer with his client to let her know that the documents she had submitted up to that point were insufficient to establish her identity to their belief at that time, and that was in July 2010. There is a hearing notice that was made a part of the actual exhibits to the case in which the prior judge, Dahl, had actually noted on the bottom of the document that it is imperative for you to bring identity documents to this hearing because the ones that you have submitted thus far are not going to establish your identity. And she did bring two other documents which were not capable of being authenticated. Okay. But let me try again. Where is there evidence that when she submitted the documents in 2003 or 2004, she knew or should have known that they were inauthentic? Because I'm worried about Yemeni. I understand that, but I have to digress just for one second. The documents that everybody keeps talking about that were submitted weren't submitted after this notice in July 2010. The last time the petitioner submitted a document to establish her identity was in 2007. And since 2007, the memorandum came out indicating that her household registration booklet was insufficient. They're telling you your documents don't carry the day. Fine. Now tell me where there's some evidence that she knew or should have known that the documents on which the adverse credibility finding was made were counterfeit. Yemeni. Yemeni's the case. Tell me why Yemeni doesn't apply here. Well, Yemeni doesn't apply because she entered the United States with a fake document. Identity was an issue. There's no witnesses to her identity. She could have even requested a duplicate copy of her birth certificate as a comparative specimen for the one that she had. What you're saying is that she didn't sufficiently carry her burden of proof as to identity. That's correct. That does not answer my question, does it? No. But new or should have known is not something that has to be a factual determination. The record evidence shows that if you're 31 years of age and you go for a national ID and it requires you taking a photograph and you can't explain or make no attempt to explain to the judge why there's no photograph in the document you submitted as evidence that this is a national ID, then we should infer that she knew that there was no photograph in there. She's never said, I took a photograph. She didn't say, I went to the facility and they took my photograph. I can't explain why my photograph is not in this document. There's never been any attempt at all for this particular petitioner to indicate or to try to explain why a person who would normally have to go down and take a picture for a photo ID has a document that doesn't have her photo in it. So she should have known, and we have reason to suspect that she knows, that that document was not a valid document because it should have had her picture in it. And she would be the only person who would know whether the picture was in there. She had to go get the document. No one can get her identity document for her. Reason to suspect this is not a Fourth Amendment case. In CADCA it doesn't require the IJ to actually explicitly state that she knew. It's enough to infer that she knew simply because it would require us to believe that the Chinese government has a motive to actually issue or authorize counterfeit documents, and there's nothing in this record that would show that the Chinese government would authorize or issue a counterfeit document. Well, this isn't exactly that situation, Ms. Clay. She didn't get the documents directly from the Chinese government. Someone sent them to her, her mother. So it's not a question, as was in the recent case in December in Xi, where the document— I'm sorry. Go ahead. There's no reason for me to talk when you want to talk. I'm sorry. On page 303 she explains that she personally received her identification documents. There are several times where she flip-flopped on whether or not she received or didn't receive, whether it was before she was here, whether she was not here, with regard to her certificate. The certificate itself indicates that it was issued in 2003. She testified in the court that she actually had seen the document before she arrived in the United States, which is in 2002. There's no way in the world you can submit a document that was issued in 2003 and then testify that you saw it in 1999 or 1997 when she claimed that she saw it. This is her testimony to the court. Okay. Am I over? In closing, I would just like to say that the court should deny her consolidated petition for review because the record does not compel the conclusion that she established her identity. Petitioner's counsel makes a lot to do about the fact that she got the identity document later, but we would argue that when she applied for that particular document, she did not submit the original, so a passport examiner would not have known or may not have been able to detect that the documents that they were reviewing for the passport were actually counterfeit. She had submitted copies for that as well. So even assuming the documents had established her identity, the board does not act arbitrarily or contrary to law. If it denies a motion to reopen, that's not supported by evidence that was not previously unavailable. You're well over time. I think we have your position. Thank you. Thank you for your argument. Rebuttal, and since we extended your colleague's time, we'll wind up extending yours too. Well, I'll try to be very brief, Your Honors. In regard to Humane, it is true that her mother had sent her two of the documents. If we apply them in any case, even assuming they are counterfeit, that would not necessarily be held against her if she didn't have personal, firsthand knowledge of the fact that they were counterfeit. I would also indicate in regard to – Well, it's a little bit catch-22, though, because all we know about how she acquired the documents is what she said, and it's her credibility that's at issue. So we may not have affirmative testimony that she knew, but we've got counterfeit documents, and there's never been anything to counter the examiner's finding, and there were years. There were years available for your predecessor as her counsel to have looked into that question. Now, she was able subsequently to obtain a legitimate identity document in the form of the passport, and the BIA decided that came in too late. So here we are. Why is the BIA not entitled to say it's too late? Why wasn't the IJ, based on the record before the IJ, entitled to say she hadn't established who she was? Well, she had submitted documents other than the two documents which were deemed to be counterfeit that did establish her identity. Well, if they're valid, but they couldn't be authenticated. That was the problem. I mean, you could come up with – she may have had four counterfeit documents, and they could establish the two that were counterfeit, and they couldn't say anything about the other two. That doesn't establish her identity. That isn't something the IJ is compelled to conclude. That is true, Your Honor. However, this is a pre-real ID case. In many cases, identity is established simply through testimony. If there are no documents available and she can't reasonably obtain documents, in this case, obviously, she had documents and did submit them, but her testimony added to the documents to identify her. And I would further note that the judge didn't question her credibility. In fact, he indicated in his decision that her testimony was consistent, that he didn't question the credibility of her claim. The only basis of the judge's decision against her was the two documents which the forensic examiner deemed to be counterfeit. If identity is the issue and the passport subsequently verifies her identity, then that's valid evidence that she should be entitled to be presented. May I make one more comment? So you want us to grant review for further proceedings and you can establish identity in those further proceedings? Yes, Your Honor. Let me tell you why. I believe that the law is insufficient as regarding this situation. The language of the law says it's regarding evidence that was not available and could not have been discovered. But I would submit, Your Honors, that the law ought to include or could not reasonably have been expected to be obtained. And even the BIA indicated in their footnote that it wasn't necessarily reasonable for the judge to expect her to obtain a passport. I read you that footnote previously, but I'll indicate it again. The BIA said in their November 2012 decision in a footnote, moreover, we conclude even if the immigration judge erred in faulting her for not applying for a passport, so. A statement that begins even if is not a statement that suggests agreement with the proposition being argued. I mean, I heard you say that before and I let it pass, but that doesn't suggest that the BIA thinks the IJ was wrong on that. It just says even if he was wrong, you still lose, so. Well, if there, okay, if there was no reasonable expectation for her to have done that, then she shouldn't be barred from being able to do that subsequent. That's the case. So petitioner would seek her opportunity to go back to court, verify her identity, which is the central issue that is being concerned with. We thank you. We thank both counsel for your helpful arguments. We worked you over time today. We appreciate the assistance. The case just argued is submitted. Thank you, Your Honor.
judges: Farris, Clifton, Bea